WHITE LAMB FINLAY, INC. v. UNITED STATES

**No. 5113.**—Invoice dated Ghent, Belgium, October 23, 1939.
　　　　Certified October 25, 1939.
　　　　Entered at New York, November 13, 1939.
　　　　Entry No. 750290.

## Third Division, Appellate Term

(Decided February 4, 1941)

*James W. Bevans* for the appellant.
*Charles D. Lawrence*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellee.

Before CLINE, TILSON, and WALKER, Judges

TILSON, Judge: This is an application for a review of a decision and judgment of the trial court (Reap. Dec. 5016) which held the proper dutiable export value of certain woven flax paddings exported from Belgium on October 25, 1939, to be the value found by the appraiser. This case was submitted to the lower court upon the following stipulation, entered into by and between counsel for the respective parties:

IT IS STIPULATED by and between counsel, subject to the approval of the Court, as follows:

1. That the merchandise involved in the above-entitled suit, or merchandise similar thereto, was not freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, at the time of exportation of the instant merchandise or subsequent thereto, but was manufactured solely for exportation to the United States, by the manufacturer herein or by other manufacturers of such or similar merchandise.

2. That the merchandise forming the subject matter of this suit or merchandise similar thereto was freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States, at the time of exportation of the instant merchandise and subsequent thereto, for future delivery by the exporter herein and by other manufacturers of such or similar merchandise.

3. That the merchandise involved in this suit was purchased by plaintiff on an order dated June 21, 1939, in accordance with which deliveries were to be made during September, October, and November, 1939, at the price of 4.15 Belgian Francs per meter, packed, less 3%.

4. That the merchandise involved in this suit was exported from Belgium on October 25, 1939.

5. That on or about September 20, 1939, the manufacturer of said merchandise had freely offered for sale to all purchasers for exportation to the United States such or similar merchandise for future delivery at 6 Belgian Francs per meter, packed, less 3%.

6. That on September 20, 1939, plaintiff herein placed an order with the said manufacturer for such or similar merchandise at the price of 6 Belgian Francs per meter, packed, less 3%, for delivery during January, February, and March, 1940.

7. That in the ordinary course of trade such or similar merchandise was not carried in stock by the manufacturer in Belgium of the instant merchandise for spot delivery, and no deliveries had been made of such or similar merchandise by the manufacturer of the instant merchandise at the price of 6 Belgian Francs at the time of exportation of the merchandise involved herein from Belgium, namely, October 25, 1939.

8. That in the ordinary course of trade, such or similar merchandise was not carried in stock by other manufacturers in Belgium of merchandise similar to that imported herein for spot delivery, and no deliveries had been made by other manufacturers of such or similar merchandise at the price of 6 Belgian Francs at the time of exportation of the merchandise involved herein from Belgium, namely, October 25, 1939.

9. That if the invoice price under the order of June 21, 1939 is held to be the export value, for duty purposes, under Section 402 (d) of the Tariff Act of 1930, of the merchandise involved herein, the entered value correctly represents such export value.

10. That if the appraised value, equivalent to the price of the order placed September 20, 1939 is held to be the export value for duty purposes under section 402 (d) of the Tariff Act of 1930 of merchandise involved herein, then the appraised value correctly represents such export value.

According to the agreed facts the merchandise in this case was purchased, or ordered, on June 21, 1939, with the agreement that deliveries thereof were to be made during September, October, and November of the same year, at the price of 4.15 Belgian francs per meter, packed, less 3 per centum. It is also agreed that on September 20, 1939, the plaintiff herein placed another order for merchandise such as or similar to that in this case, for delivery during January, February, and March of 1940, at the price of 6 Belgian francs per meter, packed, less 3 per centum, and that no deliveries had been made of such or similar merchandise at the price of 6 Belgian francs per meter, packed, less 3 per centum at the date of exportation of the instant merchandise.

On this state of facts the appellant in his brief filed herein contends:

It is appellant's contention that where there is a quotation of a new price, such new price is not effective as to merchandise previously manufactured on order and shipped to the United States after such new quotation, unless at the time the price was changed the manufacturer had on hand merchandise available for delivery or procurable for reasonably prompt delivery.

In support of this contention counsel for appellant quotes the following from the case of *Kuttroff Pickhardt* v. *United States*, 14 Ct. Cust. Appls. 176:

To freely offer an article for sale within the contemplation of subdivision (f) it should, at least, appear that some reasonable quantity of the offered article was ready or could be produced for reasonably prompt delivery.

\*　　\*　　\*　　\*　　\*　　\*　　\*

To establish the price which the producer would have received or was willing to receive it must at least appear that he had something to sell at that price, and also that he had or could produce enough to sell, so that more than two small orders could be filled without exhausting the supply * * *.

As an explanation for the above holding the appellate court immediately stated:

* * * If this is not so, the mere declaration of a possible producer that he was willing to sell at a named price would enable him to compel an appraisal at a value which did not then exist and might never obtain. In other words, without having anything to sell, without knowing what it would cost to produce the article, he could by mere fiat control, to some extent, at least, the course of commerce.

The above ruling of the appellate court was made in a case where an American manufacturer was trying to compel the appraisement of imported dyes at the American selling price on a showing that only two small orders of only 223 pounds of the domestic article exhausted its supply, as against importations amounting to approximately 24,000 pounds per annum. From a reading of the entire decision of the appellate court it is clear that they did not intend to permit some American manufacturer to control the value of imported merchandise by a mere fiat, and with this holding of the court we are in entire agreement.

In the instant case, however, we are faced with a different situation entirely. No one in this case is trying to control the value of imported merchandise by a mere fiat. We are, therefore, not able to agree with the contention of counsel for appellant, as hereinbefore set out. The law is not interested with whether or not a person offering merchandise for sale for export has on hand at that time all the merchandise he is offering for sale, or whether he has any of it on hand at that time.

In a case recently decided by the Second Division of this court, *Woolworth* v. *United States*, Reap. Dec. 5094, it was shown that practically all the Christmas-tree ornaments exported from Germany to the Woolworth stores throughout the world were ordered by sample, and that at the time the order was placed no one making the offer

had any stock on hand to offer for sale. The records on file in this office, of which the court may take judicial notice, show that it is quite a common practice for a buyer to contract for the purchase of merchandise for delivery at some future date, when the seller has on hand no stock at all, and nothing more than a sample to select from. This is a common, ordinary, everyday method of doing business.

This suggests the question as to what constitutes a reasonably prompt delivery. As to this we do not feel that any definite rule may be set down. What would constitute a reasonably prompt delivery in one case might not be true in another case, and vice versa. One purchasing merchandise the sale and use of which was controlled by a season, or by style or fashion, would ordinarily expect more prompt delivery than a person buying merchandise which would be used for a number of years without regard to season, style, or fashion. In the first case 2 months might *not* be reasonably prompt delivery while in the second case 6 months might be reasonably prompt delivery.

We find nothing in the *Kuttroff-Pickhardt* decision, *supra*, and the other cases cited by counsel for the appellant, which could be construed as an inhibition against our taking the price of 6 Belgian francs per meter, packed, less 3 per centum, at which "on or about September 20, 1939, the manufacturer of said merchandise had freely offered for sale to all purchasers for exportation to the United States such or similar merchandise for future delivery," even though at that time the manufacturer had no stock on hand, and even though no sales or deliveries had been made at the price of 6 Belgian francs, packed, less 3 per centum. This offer for sale was within approximately 1 month of the date of exportation of the instant merchandise, whereas the only other offer we have, to wit: the offer of 4.15 Belgian francs per meter, packed, less 3 per centum, made on June 21, 1939, was removed from the date of exportation of the instant merchandise by approximately 4 months, and might well be considered too far removed to be given any consideration of weight, in the absence of evidence showing that the market was steady and did not fluctuate.

However, if we should accept the contention of counsel for the appellant that because the manufacturer had no stock on hand at the time he made the offer of 6 Belgian francs per meter, packed, less 3 per centum, that price could not be used as a basis for finding export value, then we would have to hold that the price of 4.15 Belgian francs per meter, packed, less 3 per centum, could not be accepted by us as a basis for finding export value, for the reason that at the time said offer was made the manufacturer had no stock on hand. In that event we would be left without any evidence of a proper export value, and under such conditions would be forced to dismiss this appeal, the

effect of which would be to reinstate the appraised value of 6 Belgian francs per meter, packed, less 3 per centum.

Said section 402 (d) is not interested in the price a buyer agrees to pay for merchandise when he contracts for the purchase of the same, whether any merchandise is on hand at that time, nor with the date it is agreed to be delivered, or is actually delivered, but it is satisfied with the value or the price *at the time of exportation of such merchandise to the United States*, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus packing charges and other expenses specified in section 402 (d) of the Tariff Act of 1930.

The rule of the Treasury Department in effect from about 1916 to 1938 of not appraising merchandise at the value stated in a new offer for sale unless a sale had been made at such new offer was undoubtedly based on facts which the Department felt justified such a rule, but that rule was revoked in 1938 and the instant merchandise was not exported until October 25, 1939. Therefore, the appellant herein could make no claim under a rule or practice which had been revoked for approximately 12 months before his merchandise was exported.

When, as in this case, merchandise is to be appraised at export value, said section 402 (d) is in no wise concerned whether a purchaser takes delivery of the merchandise immediately, 30, 60, 90 days, or 2 years later, whether the seller has any stock on hand at the time the order is placed, or whether sales or deliveries are made under a subsequent offer for sale before or after the said date of purchase. In no case however, where, as in this case, all the other elements of export value being present, can we lose sight of the controlling fact that the date of exportation governs.

After a careful consideration of the agreed facts, the decision and judgment of the lower court, the briefs submitted by counsel for both parties, and the applicable authorities, we find as facts:

1. That the merchandise in this case consists of woven flax paddings, exported from Belgium on October 25, 1939.

2. That the proper basis of appraisement is the export value, as defined in section 402 (d) of the Tariff Act of 1930.

3. That the free offer for sale of such or similar merchandise at 6 Belgian francs per meter, packed, less 3 per centum, made on or about September 20, 1939, is sufficiently near the date of exportation of the instant merchandise to be used as a basis for finding the export value in this case.

We therefore conclude as matter of law:

That the free offer for sale of such or similar merchandise at 6 Belgian francs per meter, packed, less 3 per centum, made on or about

September 20, 1939, for delivery in January, February, and March, 1940, even though no deliveries had been made of such or similar merchandise at said prices at the date of exportation of the instant merchandise, may be properly used as the basis for finding export value in this case, and the judgment of the trial court is accordingly affirmed.

Judgment will be rendered accordingly.